Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARIA VAGHEFMOGHADDAM,<br><br>                    Plaintiff,<br><br>vs.<br><br>SHARECARE, INC., JEFF ARNOLD, JEFF ALLRED, JOHN CHADWICK, SANDRO GALEA, KEN GOULET, BRENT LAYTON, VERONICA MALLETT, ALAN MNUCHIN, RAJEEV RONANKI, JEFF SAGANSKY, and NICOLE TORRACO,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Aria Vaghefmoghaddam ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

### <u>SUMMARY OF THE ACTION</u>

1.      Plaintiff brings this stockholder action against Sharecare, Inc. ("Sharecare" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company to Altaris, LLC ("Altaris"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a June 21, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the deal, Altaris will acquire Sharecare for $1.43 per share in cash at closing.

3. Thereafter, on August 5, 2024, the Company filed its Preliminary Proxy Statement (the "Proxy Statement") on Schedule 14A with the United States Securities and Exchange Commission (the "SEC").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Sharecare, provided by the Company to the Company's financial advisors, Houlihan Lokey Capital, Inc. ("Houlihan Lokey") and MTS Securities, LLC ("MTS"); and (c) the

data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Houlihan Lokey and MTS, and provided to the Board.

6.    Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.    Plaintiff is a citizen of California and, at all times relevant hereto, has been a Sharecare stockholder.

8.    Defendant Sharecare operates as a digital healthcare platform company. Sharecare is incorporated under the laws of the State of Delaware and has its principal place of business at 255 East Paces Ferry Road NE, Suite 700, Atlanta, GA 30305. Shares of Sharecare common stock are traded on the NASDAQ under the symbol "SHCR."

9.    Defendant Jeff Arnold ("Arnold") has been the Chair of the Board of Directors of the Company at all relevant times. In addition, Defendant Arnold is the Company's co-founder and serves as its Chief Executive Officer ("CEO").

10.    Defendant Jeff Allred ("Allred") has been a director of the Company at all relevant times.

11.    Defendant John Chadwick ("Chadwick") has been a director of the Company at all relevant times.

12.    Defendant Sandro Galea ("Galea") has been a director of the Company at all relevant times.

13.    Defendant Ken Goulet ("Goulet") has been a director of the Company at all relevant times.

14.     Defendant Veronica Mallett ("Mallett") has been a director of the Company at all relevant times.

15.     Defendant Alan Mnuchin ("Mnuchin") has been a director of the Company at all relevant times.

16.     Defendant Rajeev Ronanki ("Ronanki") has been a director of the Company at all relevant times.

17.     Defendant Jeff Sagansky ("Sagansky") has been a director of the Company at all relevant times.

18.     Defendant Nicole Torraco ("Torraco") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 9-18 are collectively referred to as the "Individual Defendants."

20.     Non-Party Altaris, LLC is an investment firm exclusively focused on the healthcare industry.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

24.     Defendant Sharecare operates as a digital healthcare platform company. Its Sharecare platform connects people, patients, providers, employers, health plans, government organizations, and communities that optimize individual and population-wide well-being.

*The Flawed Sales Process*

25.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to Altaris.

26.     Of significant note, two of the Company's largest stockholders, Defendant Arnold and Claritas (together the "Rollover Stockholders"), who respectively own approximately 10.4% and 9.9% of the voting power of the Company, will be treated differently than all other stockholders of Sharecare, including Plaintiff. Specifically, the Rollover Stockholders will be allowed to roll over their equity into the new entity ("TopCo LP"), allowing the Rollover Stockholders to continue to reap the benefits of their investments while all other stockholders of the Company, such as Plaintiff, are frozen out of their ownership interests. Notably, the Preliminary Proxy Statement fails to provide information justifying this decision.

27.     Moreover, the Proxy Statement fails to provide any explanation as to the Special Committee determining a need to hire MTS after the company had already retained Houlihan Lokey, in light of the fact that Defendant Chadwick had already recused himself from all meetings of the Sharecare board relating to the strategic process.

28.     In addition, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Altaris, and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

29.     The Proxy Statement fails to disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

30.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

31.     On June 21, 2024, Sharecare and Altaris issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> ATLANTA, June 21, 2024 (GLOBE NEWSWIRE)-- Sharecare (Nasdaq: SHCR), the digital health company that helps people manage all their health in one place, announced today that it has entered into a definitive agreement to be acquired by an affiliate of Altaris, LLC, an investment firm exclusively focused on the healthcare industry.
>
> Under the terms of the definitive merger agreement, Sharecare stockholders will receive $1.43 in cash per share. The merger consideration of $1.43 per share represents a premium of approximately 85% over the closing price of Sharecare on June 20, 2024, the last trading day prior to public disclosure of the transaction and an 87% premium over the 90-day volume weighted average trading price. Upon the completion of the acquisition, Sharecare will become a privately held company and its common stock will no longer be listed on Nasdaq.

Sharecare's comprehensive and data-driven virtual health platform is designed to help people, providers, employers, health plans, government organizations, and communities optimize individual and population-wide health and well-being. Across all three of its business channels, Sharecare delivers value to the healthcare system by improving access and outcomes for patients, imperatives that are clearly aligned with Altaris' investment strategy and focus.

Jeff Arnold, Sharecare's founder and executive chairman of the Board of Directors, said, "After embarking on a deliberate process to maximize stockholder value and best position Sharecare for continued growth and success, we carefully evaluated a variety of options. Our Board of Directors determined that this transaction is in the best interests of Sharecare and its stockholders and, upon closing, will deliver significant, immediate, and certain value to our stockholders."

Arnold added, "With Altaris as a partner, we are excited to continue executing on Sharecare's mission with the benefit of their deep healthcare industry expertise, as well as increased capital and strategic and operational flexibility to continue providing industry-leading solutions to our customers across our three channels."

"Today's announcement not only delivers value for Sharecare's stockholders but also will result in exciting opportunities for our employees and customers," said Brent Layton, CEO of Sharecare. "This transaction is an important step forward to enable the continued growth and evolution of Sharecare, and further strengthens us as we deploy our innovative technology across the healthcare sector."

**Transaction Details**

A special committee (the "Special Committee") of the Board of Directors of Sharecare (the "Board"), comprised solely of independent directors, carefully evaluated Altaris' proposal and alternatives thereto. Following this process, the Special Committee determined that the transaction is in the best interests of Sharecare and its stockholders, and acting upon the recommendation of the Special Committee, the Board approved the merger agreement and the transaction, and will recommend that the Company's stockholders approve both the adoption of the merger agreement and the transaction on the terms set forth in the merger agreement.

The transaction is expected to close in the second half of 2024, subject to customary closing conditions, including approval by Sharecare stockholders and the receipt of required regulatory approvals. The transaction is not subject to a financing condition.

Arnold has agreed to vote his shares in favor of the transaction, and will roll over substantially all of his existing equity and continue to be a significant shareholder following this transaction. In addition, Arnold will continue to serve as executive chairman and Layton as CEO, and Sharecare's current executive leadership team is expected to continue in their roles following the close of the transaction.

*Potential Conflicts of Interest*

32.    The breakdown of the benefits of the deal indicates that Sharecare insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Sharecare.

33.    In addition, Company insiders currently own large illiquid blocks of company shares, all of which will be converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name of Beneficial Owner | Shares of Common Stock | % of Common Stock Outstanding | % of Voting Power** |
|---|---|---|---|
| *Directors and Named Executive Officers* | | | |
| Alan G. Mnuchin(1) | 2,600,538 | * | * |
| Jeff Sagansky(2) | 1,970,531 | * | * |
| Jeff Arnold(3)(4) | 42,336,819 | 10.6% | 10.4% |
| John Chadwick(5) | 37,211,125 | 10.1% | 9.9% |
| Ken Goulet(3)(6) | 1,262,603 | * | * |
| Rajeev Ronanki(3) | 154,506 | * | * |
| Dr. Sandro Galea(3)(7) | 332,623 | * | * |
| Jeffrey Allred(3)(8) | 705,385 | * | * |
| Dr. Veronica Mallett(3)(9) | 271,053 | * | * |
| Brent Layton(3)(10) | 1,456,975 | * | * |
| Nicole Torraco(3) | 43,124 | * | * |
| Justin Ferrero(3)(11) | 14,246,036 | 3.8% | 3.7% |
| Dawn Whaley(3)(12) | 14,309,546 | 3.8% | 3.7% |
| l executive officers and directors as a group (15 persons)(13) | 119,511,864 | 31.3% | 30.7% |
| *5% Beneficial Owners* | | | |
| Entities Affiliated with Claritas Capital(5) | 37,211,125 | | |

34.     In addition, employment agreements with certain Sharecare executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| **Named Executive Officers** | | | | |
| Brent Layton *Chief Executive Officer* | 2,500,000 | 1,149,247 | 40,202 | 3,689,449 |
| Justin Ferrero *President and Chief Financial Officer* | 2,250,000 | 7,254,805 | 34,295 | 9,539,100 |
| Dawn Whaley *President and Chief Marketing Officer* | 2,250,000 | 7,254,805 | 39,328 | 9,544,133 |
| Jeff Arnold *Founder and Executive Chairman (Former Chief Executive Officer)* | 4,595,902 | 6,539,168 | 56,965 | 11,192,035 |

| Name | Severance Payment ($) | Annual Bonus ($) |
|---|---|---|
| **Named Executive Officers** | | |
| Brent Layton | 2,000,000 | 500,000 |
| Justin Ferrero | 1,800,000 | 450,000 |
| Dawn Whaley | 1,800,000 | 450,000 |
| Jeff Arnold | 4,200,000 | 395,902 |

35.     The Proxy Statement also fails to disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

36.    This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

37.    Thus, while the Proposed Transaction is not in the best interests of Sharecare, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

38.    The Sharecare Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

39.    The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

> a.    Two of the Company's largest stockholders, Defendant Arnold and Claritas (together the "Rollover Stockholders"), who respectively own approximately 10.4% and 9.9% of the voting power of the Company, will be treated differently

than all other stockholders of Sharecare, including Plaintiff. Specifically, the Rollover Stockholders will be allowed to roll over their equity into the new entity ("TopCo LP"), allowing the Rollover Stockholders to continue to reap the benefits of their investments while all other stockholders of the Company, such as Plaintiff, are frozen out of their ownership interests. Notably, the Preliminary Proxy Statement fails to provide information justifying this decision;

b.  Explanation as to the Special Committee determining a need to hire MTS after the company had already retained Houlihan Lokey, in light of the fact that Defendant Chadwick had already recused himself from all meetings of the Sharecare board relating to the strategic process;

c.  Whether the confidentiality agreements entered into by the Company with Altaris differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Altaris, would fall away; and

e.  The totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

40.    This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning

motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Sharecare's Financial Projections*

41.     The Proxy Statement fails to provide material information concerning financial projections for Sharecare provided by Sharecare management to the Board, Houlihan Lokey, and MTS and relied upon by Houlihan Lokey and MTS in their respective analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

42.     Notably the Proxy Statement reveals that as part of its analyses, Houlihan Lokey reviewed, "certain information relating to the historical, current and future operations, financial condition and prospects of Sharecare made available to Houlihan Lokey by Sharecare, including (a) the Projections (as defined in the section of this proxy statement captioned "*Special Factors — Unaudited Prospective Financial Information*") and (b) estimates prepared by Sharecare management of Sharecare's net operating loss tax carryforwards ("NOLs") and Sharecare's ability to utilize those NOLs to achieve future tax savings (the "Estimated NOL Tax Savings")."

43.     Moreover, the Proxy Statement reveals that as part of its analyses, MTS reviewed, "reviewed certain internal financial analyses and forecasts relating to Sharecare's business prepared by and provided to MTS Securities by Sharecare management."

44.     Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that Sharecare management provided to the Board, Houlihan Lokey, and MTS. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates

or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

45.    With regard to the *February Projections* provided by Sharecare Management, the Proxy Statement fails to disclose material line items for the following metrics:

     a.  Enterprise, including all underlying inputs, metrics, and assumptions used to calculate same;

     b.  Provider, including all underlying inputs, metrics, and assumptions used to calculate same;

     c.  Life Sciences, including all underlying inputs, metrics, and assumptions used to calculate same;

     d.  Total Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

     e.  Cost of Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

     f.  Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate same;

     g.  Sales and Marketing Expenses, including all underlying inputs, metrics, and assumptions used to calculate same;

     h.  General and Administrative Expenses, including all underlying inputs, metrics, and assumptions used to calculate same;

     i.  Product and Technology Expenses, including all underlying inputs, metrics, and assumptions used to calculate same;

j.   Total Operating Expenses, including all underlying inputs, metrics, and assumptions used to calculate same; and

k.   Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same.

46.   With regard to the *June Projections* provided by Sharecare Management, the Proxy Statement fails to disclose material line items for the following metrics:

a.   Enterprise, including all underlying inputs, metrics, and assumptions used to calculate same;

b.   Provider, including all underlying inputs, metrics, and assumptions used to calculate same;

c.   Life Sciences, including all underlying inputs, metrics, and assumptions used to calculate same;

d.   Total Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

e.   Cost of Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

f.   Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate same;

g.   Sales and Marketing Expenses, including all underlying inputs, metrics, and assumptions used to calculate same;

h.   General and Administrative Expenses, including all underlying inputs, metrics, and assumptions used to calculate same;

      i.   Product and Technology Expenses, including all underlying inputs, metrics, and assumptions used to calculate same;

      j.   Total Operating Expenses, including all underlying inputs, metrics, and assumptions used to calculate same; and

      k.   Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same.

47.    The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.    This information is necessary to provide Plaintiff in her capacity as a Company stockholder with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.    Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Houlihan Lokey and MTS' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan Lokey*

50.    In the Proxy Statement, Houlihan Lokey describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinion.

51.     With respect to the *Selected Companies Analysis*, the Proxy Statement fails to disclose:

      a.  The specific data analyzed for each of the selected publicly traded companies;

      b.  The inputs, metrics, and assumptions used to determine the Enterprise Value ("EV")/ CY 2024E Revenue Low, High, Median, and Mean multiples utilized;

      c.  The inputs, metrics, and assumptions used to determine the EV/ CY 2025E Revenue Low, High, Median, and Mean multiples utilized;

      d.  The inputs, metrics, and assumptions used to determine the EV/ CY 2024E Adj. EBITDA Low, High, Median, and Mean multiples utilized; and

      e.  The inputs, metrics, and assumptions used to determine the EV/ CY 2025E Adj. EBITDA Low, High, Median, and Mean multiples utilized.

52.     Regarding the *Discounted Cash Flow Analysis*, disclose:

      a.  The inputs, metrics, and assumptions used to determine the terminal value multiples of 6.0x to 9.0x utilized;

      b.  The inputs, metrics, and assumptions used to determine discount rate range of 11.5% to 12.5% utilized; and

      c.  The Company's weighted average cost of capital utilized.

53.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

54.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes her value

and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Sharecare stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by MTS*

55.    In the Proxy Statement, MTS describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

56.    With respect to the *Selected Public Companies Analysis*, the Proxy Statement fails to disclose:

   a.   The underlying inputs, metrics, and assumptions used to determine the 2024E Implied Value metric range of 11.7x to 18.3x utilized; and

   b.   The underlying inputs, metrics, and assumptions used to determine the 2025E Implied Value metric range of 9.0x to 14.2x utilized.

57.    Regarding the *Discounted Cash Flow Analysis*, disclose:

   a.   The underlying inputs, metrics, and assumptions used to determine the perpetuity growth rates of 2.0% to 3.0% utilized;

   b.   The underlying inputs, metrics, and assumptions used to determine the weighted average cost of capital rates of 11% to 15% utilized; and

   c.   Sharecare's weighted average cost of capital.

58.    With respect to the *Precedent M&A Transactions Analysis*, the Proxy Statement fails to disclose:

    a.   The aggregate value of each selected transaction;

    b.   The date which each selected transaction closed; and

    c.   The underlying inputs, metrics, and assumptions used to determine the EV/ Adjusted LTM EBITDA multiples range of 12.3x to 16.3x utilized.

59.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

60.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Sharecare stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

61.    Plaintiff repeats all previous allegations as if set forth in full herein.

62.    Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

63.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

64.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

65.    The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

66.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

67.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

68.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**<u>(Against all Individual Defendants)</u>**

69.     Plaintiff repeats all previous allegations as if set forth in full herein.

70.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

71.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual

Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

72.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Sharecare's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

73.    The Individual Defendants acted as controlling persons of Sharecare within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Sharecare to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Sharecare and all of its employees. As alleged above, Sharecare is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 13, 2024                    **BRODSKY & SMITH**

                                    By: *Evan J. Smith*
                                    Evan J. Smith
                                    240 Mineola Boulevard
                                    Mineola, NY  11501
                                    Phone:  (516) 741-4977
                                    Facsimile (561) 741-0626

                                    *Counsel for Plaintiff*